# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JOHN CARLO, INCORPORATED,

          Plaintiff,

-vs-                                 Case No.  6:06-cv-164-Orl-22DAB

GREATER ORLANDO AVIATION
AUTHORITY,

          Defendant,

-vs-

HUBBARD CONSTRUCTION COMPANY,

          Third-Party Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration with oral argument on the following motion filed herein:

> **MOTION:**    **VERIFIED MOTION FOR SUMMARY JUDGMENT BASED ON FAILURE TO SATISFY A CONDITION PRECEDENT, OR IN THE ALTERNATIVE, MOTION TO STAY AND COMPEL CONTRACTUALLY REQUIRED, PRESUIT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES (Doc. No. 52)**
>
> **FILED:**      **September 29, 2006**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED** to the extent it seeks summary judgment and **GRANTED** to the extent it seeks a stay and an order compelling compliance with the contractual dispute resolution procedures.

The motion is in two parts: 1) a motion for summary judgment that Plaintiff has failed to comply with the required alternative dispute resolution process prior to filing suit; or, alternatively 2) a motion to stay the proceedings, and compel the parties to exhaust the alternative dispute resolution process set forth in the contract.  For the reasons set forth below, the motion for summary judgment should be denied, however, the Court recommends that the proceedings be stayed for 150 days in order to allow the parties to exhaust the contractually required alternative dispute resolution process.  The Court further recommends that all other pending motions be denied, without prejudice to reassertion, if appropriate, following completion of the process, should the parties find it necessary to return to litigation.

### SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment when the evidence before it shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 252 2552, 91 L.Ed.2d 265 (1986). "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. *Celotex* , 477 U.S. at  323. The substantive law governing the case determines which facts are material.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In evaluating a motion for summary

-2-

judgment, the Court's role is not to weigh the evidence or to assess credibility, but to determine whether there is a genuine issue for trial. *Posada v. James Cello, Inc.,* 135 Fed. Appx. 250, 251-252 (11th Cir. June 10, 2005) (not selected for publication) (internal citations omitted). "Sufficient" evidence is that which is more than "merely colorable" and is "significantly probative." *Id.* citing *Liberty Lobby*, 477 U.S. at 250-51.

### ANALYSIS

The crux of the motion is Defendant Greater Orlando Aviation Authority's ("GOAA") assertion that the parties contractually agreed to utilize an alternative dispute resolution forum (in this case, a Dispute Review Board ("DRB")) prior to the filing of any suit arising out of the Project. GOAA maintains that the instant suit was filed by Plaintiff without completing the required process and thus, it is entitled to judgment for failure to satisfy a condition precedent.

This motion (and two other pending motions to dismiss) are addressed to the Amended Complaint, prior to the filing of an Answer. While the matter raised herein, *i.e.,* Plaintiff's alleged failure to comply with a condition precedent to filing suit, is normally an affirmative defense (*see* Rules 8(c) and 9(c), Fed. R. Civ. P.), the Eleventh Circuit has noted that, in some circumstances, the specific denial of performance of conditions precedent in a contract may be raised by motion as well as by answer. *Associated Mechanical Contractors, Inc. v. Martin K. Eby Const. Co., Inc.*, 271 F.3d 1309, 1317 (11th Cir. 2001). As Judge Conway has ruled that the issue cannot be resolved via a motion to dismiss (Doc. No. 46), GOAA seeks a merits determination on summary judgment. Unfortunately, however, the summary judgment context is also not an appropriate venue to resolve disputed issues of material fact.

There are three factors courts consider in ruling on a motion to compel arbitration[1] of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived.  *Florida Farm Bureau Ins. Companies v. Pulte Home Corp.* 2005 WL 1345779, *3 (M.D. Fla. 2005), citing  *Sims v. Clarendon Nat'l Ins. Co.*, 336 F.Supp.2d 1311, 1326 (S.D. Fla.2004); *Raymond James Fin. Servs. v. Saldukas*, 896 So.2d 707, 711 (Fla. 2005); *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 636 (Fla. 1999).  Here, as evidenced by the papers filed on the issue, the parties dispute the application of each factor.  As such, summary judgment is not available and should be denied.

### THE MOTION TO STAY/MOTION TO COMPEL

As the dispute could not be resolved in summary fashion, the Court, in accordance with both state and federal precedent on similar motions, held an evidentiary hearing.[2]  The parties appeared and presented testimony and exhibits.  Remarkably, despite the opposing Affidavits filed, the testimony from both sides was fairly consistent, with respect to the underlying facts.  The Court **finds,** as follows:

1. Plaintiff and GOAA are parties to a contract (herein "the Contract") related to construction of a fourth runway, taxiways and other improvements at Orlando International Airport (herein "the Project").  The Contract includes modifications made by change order.  Change Order 316-13 added an alternative dispute resolution procedure to the Contract, providing, in pertinent part:

Section 00720-DISPUTE REVIEW BOARD

---

[1]The DRB process is not an arbitration.  It can more accurately be described as a structure mediation, using expert neutrals to make recommended resolutions of disputes.

[2]*See, e.g., Kemiron Atlantic, Inc. v. Aguakem International, Inc.,* 290 F.3d 1287 (11th Cir. 2002) (upholding denial of motion to stay) and *Bill Heard Chevrolet Corp. v. Wilson,* 877 So. 2d 15 (Fla. 5th DCA 2004) (reversing denial of motion to compel arbitration).

> 1.0    OVERVIEW
> 1.1    A Dispute Review Board (DRB) will be established for this Project to assist
> in the resolution of disputes arising out of the Work. * * *
>
> 1.3    The DRB will be used when the procedures for resolving disputes, as set forth
> in the General Conditions and this section, is unsuccessful.  The submission to the
> DRB of any unresolved dispute is a condition precedent to a party litigating the
> unresolved dispute.

(GOAA's Exhibit 1 at hearing).   In addition to establishing the DRB, the Change Order provided

procedures for submitting disputes to the DRB, detailed the composition and compensation of the

DRB, as well as time limits and procedures for the hearing and issuance of a written recommendation

for resolution.  As set forth in the Change Order, disputes submitted to the DRB were to be resolved

as part of a two-step process.  The DRB was to initially issue a written report only to matters of

entitlement and allow the parties to thereafter determine monetary relief.  If the parties could not agree

on the relief, then the DRB "will also make a recommendation of monetary relief in accordance with

the contract, but only after formulation of the entitlement recommendation and the parties have

attempted to agree upon the monetary relief amount."  Section 4.1F.  The written recommendations

of the DRB were non-binding.

2.     The DRB was composed of experienced construction professionals, with one member

selected by Plaintiff, one by GOAA, and the Chairman by the two selected members.  Neither side

has ever expressed any objection to the fairness of the Panel or qualifications of any member of the

Panel. As part of the DRB process, the Board met periodically, on and off-site, in order to familiarize

itself with the Project and hear concerns of the Owner and the Contractor.

3.     The parties had occasion to seek a formal DRB written recommendation, with respect

to a dispute that has come to be called "the roots claim."  In April 2002, Plaintiff learned of an issue

with respect to allegedly inadequate roots removal at the site.[3]  On January 28, 2003, Plaintiff prepared a claim (request for equitable adjustment or "REA") with respect to additional work resulting from the issue.  As of July 8, 2003, the dispute was not successfully resolved in discussions with GOAA (GOAA's Exhibit 3 at hearing) and the DRB provision was subsequently invoked.[4]

4.      A DRB hearing was held on November 6, 2003, after both parties submitted written materials.  The DRB issued a written recommendation as to entitlement, apparently largely in Plaintiff's favor.  Both parties accepted the recommendation as to entitlement and attempted to negotiate monetary relief, as was required by the Contract.  As the parties were unsuccessful, and additional claims were pending, another DRB hearing was scheduled to determine monetary relief with respect to the roots claim, and to determine entitlement (if any) with respect to Plaintiff's survey claim and light can claim, both of which had been asserted unsuccessfully in informal negotiations with GOAA.

5.      The second hearing before the DRB commenced in August 2004, with Plaintiff presenting its arguments first.  Present for the purposes of presenting GOAA's position was Rich McAfee of PMA Consultants, the Owner's Authorized Representative.  Plaintiff presented its claim in the morning.  All the witnesses (including McAfee himself) agree that following Plaintiff's presentation, which included a plea for claimed unpaid overtime, McAfee, on behalf of GOAA, objected to the overtime claim, and said that if Plaintiff was going to pursue that claim, he was going

---

[3]It is alleged that Defendant Hubbard Construction Co. was responsible for inadequately clearing the site prior to Plaintiff's involvement in the Project.

[4]It is unclear to the Court exactly when this particular issue was formally submitted to the DRB.  It is clear, however, that it was after July 8, 2003 and prior to the DRB hearing on November 6, 2003.

to recommend that GOAA file a false claim action against Plaintiff.[5]  This comment, along with other indications from McAfee as to GOAA's firm rejection of Plaintiff's claims, was not well received by Plaintiff's representatives[6], and the Chairman of the DRB suggested that the hearing be recessed for a lunch break.  Upon return, Plaintiff's representatives felt that it was futile to continue, and left the meeting.  The DRB adjourned the hearing, due to Plaintiff's withdrawal.

6.      On August 12, 2004, two weeks prior to substantial completion of the Project, Plaintiff sent a letter to PMA Consultants (but not to the DRB) formally withdrawing from the DRB process. (GOAA's Exhibit 2 at hearing).  Plaintiff did not set forth any reason for its decision, claiming neither futility nor any right to do so under the contract.

7.      The parties continued to informally negotiate Plaintiff's claims, but no written resolution was ever made by the DRB with respect to the monetary relief due Plaintiff on the roots claim, nor entitlement with respect to the submitted survey or light can claims.  The other claims at issue in this suit were never presented to the DRB.  As of the date of the hearing, the Project still had outstanding punch list items for completion, but construction had been substantially completed and none of Plaintiff's employees were actively working on site.

*Analysis*

As set forth above, there are three factors courts consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived.  *Florida Farm Bureau*

---

[5]Of course, testimony varied as to *how* McAfee presented this position; from "take it or leave it" in a threatening manner to a calm, but firm, statement of fact.  Regardless, all agree that McAfee threatened a false claims suit.

[6]Indeed, there was undisputed testimony that one of the Board members said that if it were he, "I would have punched him in the mouth."

*Ins. Companies v. Pulte Home Corp.* 2005 WL 1345779, *3 (M.D. Fla. 2005), citing *Sims v. Clarendon Nat'l Ins. Co.*, 336 F.Supp.2d 1311, 1326 (S.D. Fla.2004); *Raymond James Fin. Servs. v. Saldukas*, 896 So.2d 707, 711 (Fla. 2005); *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 636 (Fla. 1999). Although this Contract calls for resolution of disputes via a Dispute Resolution Board and not arbitration, the principle involved (the desire to pursue alternative dispute resolution) is identical.

There is no question but that the parties had a valid written agreement which includes the requirement that both sides utilize the DRB procedure.  At the evidentiary hearing, however, Plaintiff contended that the DRB procedures were only intended to be in place for the duration of the active construction phase and, since that had long since passed, the DRB procedure was no longer applicable.    The Contract[7] provides, in pertinent part, the following:

> TIME FOR BEGINNING AND COMPLETION
>
> The BOARD is to be in operation throughout the life of the active CONSTRUCTION CONTRACT and, if needed, for a reasonable post-construction period following final acceptance of the project but not to exceed the date the OWNER administratively closes the Contract for construction of the project.
> (Doc. No. 52-5).

The evidence at hearing established that Plaintiff withdrew from the DRB process prior to substantial completion of the Contract, and, while there is no active construction currently underway, Final Acceptance and sign off of the Project has not yet occurred, due to the existence of outstanding punch list items.[8]  The Court finds, therefore, that the DRB requirement has not expired under these terms.

---

[7]The parties and the Board members entered into a Dispute Review Board Three Party Agreement, Specification Section 00730, incorporated into the Contract.

[8]Mr. McAfee's outburst notwithstanding, one of the salutary purposes of the DRB process is to reduce animosity and promote cooperation between the parties while the contract is being performed.  This purpose is obviously less significant at this stage of the Project, but other benefits from the process remain viable.

The Court also finds that the issues presented in this suit are issues that are within the scope of disputes the parties intended to be heard by the DRB.  The Contract provides that the DRB will be established "to assist in the resolution of disputes arising out of the Work." Section 00720;1.1.  The DRB members are to be "experienced with the type of construction methods associated with the Project, in the interpretation of contract documents and in contract dispute resolution." Section 00720;2.2.  There is nothing in the Contract otherwise limiting the broad authority of these well-qualified members to opine on disputes arising out of the Work.

The final issue, whether the parties waived the DRB process, is more complex.  Plaintiff contends that a return to the process would be futile and that GOAA waived its right to insist on the process by its "take it or we'll sue you for false claims" threat.  Further, Plaintiff complains that it would be prejudiced in having to return to the process, which is cumbersome and non-binding, in any event.

Clearly, as set forth above, McAfee's threat was inappropriate and did nothing to further the resolution process.  Nonetheless, that remark, as inflammatory as it was, is in itself insufficient to negate the utility of the DRB process or to evidence an intent by GOAA to abandon or subvert the DRB process.  As established at hearing, the remark was not condoned by the Board members, nor was there any evidence that the Board itself was tainted or biased against Plaintiff as a result.  Indeed, if anything, the  inappropriateness of the remark would weigh in Plaintiff's favor by any fair minded arbiter.

Moreover, there is no evidence that GOAA abandoned the process.  GOAA accepted the Board's finding with respect to entitlement on the roots issue and was proceeding and participating in the hearing with respect to monetary relief on that issue and entitlement on the other two issues.

Following the lunch break, the Board members and GOAA representatives returned to continue the hearing. Although Plaintiff correctly notes that GOAA has since taken actions which can be interpreted as inconsistent with the DRB process (such as failing to submit its claim for liquidated damages to the DRB) its actions must be considered in light of Plaintiff's unequivocal rejection of the DRB process and refusal to further participate in it.

GOAA representatives testified that they remain willing and able to return to the DRB process, and the Chairman of the DRB testified that the Board is willing to complete its task. Indeed, Plaintiff's representative testified that he continued to negotiate directly with GOAA following the withdrawal from the proceedings, indicating that there is still room for the parties to try to do what they agreed to do in the Contract: resolve their Contract disputes without needing to litigate. Absent a particularized showing of bias or bad faith on the part of GOAA, this Court cannot find that the DRB process is futile.[9]

Plaintiff objects that GOAA has gained an advantage in this litigation, by undertaking discovery and receiving the reports of Plaintiff's experts. To some degree this circumstance is of Plaintiff's own creation, from its abandonment of the DRB process without adequate cause. GOAA was compelled to respond to this lawsuit, and its motion to dismiss, on the ground of the DRB provisions, was denied without prejudice. The Court notes, moreover, that there was nothing to prevent Plaintiff from conducting discovery or hiring experts on its own behalf.[10] In addition, GOAA is a public body, and the vast majority of all of its records is public and therefore readily accessible

---

[9]Plaintiff cannot be heard to complain of the cumbersome nature of the process it contractually agreed to.

[10]Indeed, unless and until this Report and Recommendation is adopted by the District Judge, discovery in this case remains open.

to counsel, notwithstanding this litigation.  As the purpose of the DRB is to resolve disputes, not render legal opinions, the Court sees no unfair advantage here to either side.

The Court finds that completion of the DRB process is a valid condition precedent to suit and that satisfaction of that condition has not yet occurred.  It is therefore **respectfully recommended** that the motion be **granted**, to the extent it seeks a stay and an Order compelling the parties to return to the DRB process.  Should this recommendation be adopted, the Court should deny the pending motions, without prejudice to reassertion, if appropriate, following conclusion of the DRB process. The case should be administratively closed for a period not to exceed 150 days.[11]

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 24, 2007.

David A. Baker

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

---

[11]This period of time should allow the parties and the DRB to complete all phases of the DRB process, provided all claims are considered at one time and all participants proceed with reasonable dispatch.  Because the claims have already been refined to a high degree, this should not be an onerous schedule.